# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ricky Lamar Simmons, | No. CV-12-00435-TUC-JGZ (EJM) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Arizona, State of, et al., | |
| Respondents. | |

Petitioner Ricky Lamar Simmons filed a *pro se* petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for sexual abuse, sexual assault, and attempted sexual assault. (Doc. 11). Petitioner raises three grounds for habeas relief: (1) trial counsel was ineffective for failing to requekst a *Willits*[1] instruction; (2) trial counsel was ineffective for failing to object when the State introduced Petitioner's post-arrest statements by having a detective read a transcript of the statements rather than playing a redacted audio recording; and (3) trial counsel failed to request a psychiatric evaluation of Petitioner for sentence mitigation. *Id.*

The government filed its response contending Ground Three is unexhausted and procedurally defaulted, and that Petitioner has failed to meet his burden to establish an ineffective assistance of counsel claim for Grounds One and Two. (Doc. 16). Petitioner

---

[1] In *State v. Willits*, 96 Ariz. 184 (1964), the Arizona Supreme Court held that if the state fails to preserve evidence that is potentially exonerating, the accused may be entitled to an instruction informing the jury it may draw an adverse inference from the state's action.

filed a reply focusing only on Grounds One and Two. (Docs. 27 and 28).

As to Grounds One and Two of the Petition, the Magistrate Judge finds that Petitioner has failed to establish a violation of *Strickland v. Washington*, 466 U.S. 668 (1984), and that the state courts did not err in their resolution of Petitioner's *Strickland* claims. As to Ground Three, the Magistrate Judge finds this claim is procedurally defaulted and barred from this Court's review. Accordingly, the Magistrate Judge recommends that the District Court, after its independent review, deny the petition and dismiss this matter with prejudice.

## I. Factual and Procedural Background

### A. Trial, Sentencing, and Appeal

The Arizona Court of Appeals found the following facts in Petitioners' case:

> In October 2005, seriously ill as the result of methamphetamine use and infection, T. was sleeping, naked, on her couch when "something wet" hit her arm. She awoke to find her friend, [Petitioner], masturbating and ejaculating on her. Over the next several hours, [Petitioner] attempted to engage in sexual intercourse with T. At trial, T. testified [Petitioner] placed his finger in both her vagina and her anus, attempted to penetrate her vagina with his penis, poured cocaine on her breast and licked it off, hit her with a shoe, and threatened to kill her when she was not compliant. Before leaving, he told her, "You're dying. I'm not even going to have to kill you. You're going to do all the work for me." He then told her he would be back later to bury her body and left. T. thereafter crawled from her mobile home to the road, where she was discovered when an acquaintance passed by. She was eventually taken to a hospital where medical personnel treated her and collected physical evidence of the assault.

(Doc. 16 Ex. A at 3-4.)

On January 14, 2008 a Pima County Superior Court jury found Petitioner guilty of sexual abuse, attempted sexual assault, and two counts of sexual assault. (Doc. 16 Ex. B at 21). On February 12, 2008 the trial court sentenced Petitioner to consecutive, presumptive, 7-year prison terms for the sexual assault convictions and placed Petitioner on lifetime probation for the other offenses. *Id*.

Petitioner sought review in the Arizona Court of Appeals and argued that the evidence was insufficient to support his convictions. (Doc. 16 Ex. B). On February 27,

2009 the Court of Appeals affirmed Petitioner's convictions and sentences. (Doc. 16 Ex. A). Petitioner sought review from the Arizona Supreme Court, but the court denied review on July 22, 2009. (Doc. 16 Ex. E, F). Petitioner did not seek review of this decision by the United States Supreme Court. (Doc. 11 at 3).

### B. Petition for Post-Conviction Relief

On August 6, 2009, the Petitioner initiated proceedings in Pima County Superior Court for Rule 32 post-conviction relief. (Doc. 16 Ex. G). Petitioner alleged two claims of ineffective assistance of counsel: counsel's failure to request a *Willits* instruction, and failure to request a psychiatric evaluation for sentence mitigation. (Doc. 16 Exs. H, I). A third issue was raised by Petitioner in a second supplemental petition filed after the first day of a two-day evidentiary hearing:[2] trial counsel's failure to object to the State's introduction of Petitioner's post-arrest statements by having a detective read the statements from a transcript. (Doc. 17 Exs. L, M). Following the evidentiary hearing, the court denied post-conviction relief on August 31, 2010. (Doc. 17 Ex. N).

Petitioner then filed a petition for review with the Arizona Court of Appeals on November 3, 2010. (Doc. 18 Ex. O). In this petition, Petitioner abandoned his claim regarding trial counsel's failure to request a psychiatric evaluation prior to sentencing. The Court of Appeals agreed to review the case and denied relief on February 7, 2011. (Doc. 18 Ex. Q). On March 10, 2011 Petitioner sought review by the Arizona Supreme Court (Doc. 18 Ex. R), which denied review on July 20, 2011 (Doc. 18 Ex. S).

### C. Habeas Petition

Petitioner filed his Petition for Writ of Habeas Corpus (PWHC) in this Court on June 6, 2012. (Doc. 1). The Court dismissed the petition without prejudice for failure to include the Petitioner's custodian as a respondent. (Doc. 10). Petitioner then filed an amended PWHC on September 18, 2012, asserting three grounds for relief. (Doc. 11). In

---

[2] The Arizona Court of Appeals noted that "[a]lthough the trial court apparently did not expressly grant Simmons permission to file that additional supplemental petition, *see* Ariz. R. Crim. P. 32.6(d), it nonetheless considered and rejected the claim on its merits." (Doc. 18 Ex. Q at 3 n. 1).

Ground One, Petitioner alleges ineffective assistance of trial counsel in violation of his Sixth Amendment rights based on counsel's failure to request a *Willits* instruction. *Id*. at 6. In Ground Two, Petitioner alleges his Fifth, Sixth, and Fourteenth Amendment rights were violated by trial counsel's failure to object to the State's introduction of Petitioner's post-arrest statements by having a detective read the statements from a transcript. *Id*. at 7. In Ground Three, Petitioner alleges his Fifth, Sixth, and Fourteenth Amendment rights were violated by trial counsel's failure to present available mitigating evidence at sentencing. *Id*. at 8.

Respondents argue that Petitioner's first two claims fail on the merits because of a failure to meet his burden of proving both that "counsel's performance was constitutionally deficient and that the state court's denial of the claims was an unreasonable application of *Strickland v. Washington*." (Doc. 16 at 8). Respondents further argue that Petitioner's third claim is procedurally defaulted because he failed to raise this claim before the Court of Appeals in his petition for post-conviction relief. *Id*. at 7.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits the federal court's power to grant a petition for a writ of habeas corpus on behalf of a state prisoner. First, the federal court may only consider petitions alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Sections 2254(b) and (c) provide that the federal courts may not grant habeas corpus relief, with some exceptions, unless the petitioner exhausted state remedies. Additionally, if the petition includes a claim that was "adjudicated on the merits on State court proceedings," federal court review is limited by section 2254(d).

### A. Exhaustion

A state prisoner must exhaust his state remedies before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To exhaust state remedies, a petitioner must afford the state courts

the opportunity to rule upon the merits of his federal claims by fairly presenting them to the state's highest court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary opportunity, the prisoner must fairly present her claim in each appropriate state court ... thereby alerting the court to the federal nature of the claim."). In Arizona, unless a prisoner has been sentenced to death, the highest court requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals, either through the direct appeal process or post-conviction proceedings. *Crowell v. Knowles*, 483 F.Supp.2d 925, 931–33 (D. Ariz. 2007).

A claim is fairly presented if the petitioner describes both the operative facts and the federal legal theory upon which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003), *overruled on other grounds*, *Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007). The petitioner must have "characterized the claims he raised in state proceedings *specifically* as federal claims." *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000) (emphasis in original), *opinion amended and superseded*, 247 F.3d 904 (9th Cir. 2001). "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). "Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Hivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

However, "[a] habeas petitioner who [fails to properly exhaust] his federal claims in state court meets the technical requirements for exhaustion" if there are no state remedies still available to the petitioner. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). "This is often referred to as 'technical' exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy." *Thomas v. Schriro*, 2009 WL 775417, *4 (D. Ariz. March 23, 2009). "If no state remedies are currently available, a claim is technically exhausted," but, as discussed below, the claim is procedurally defaulted and is only subject to federal habeas review in

a narrow set of circumstances. *Garcia v. Ryan*, 2013 WL 4714370, *8 (D. Ariz. Aug. 29, 2013).

### B.     Procedural Default

If a petitioner fails to fairly present his claim to the state courts in a procedurally appropriate manner, the claim is procedurally defaulted and generally barred from federal habeas review. *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991). There are two categories of procedural default. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, the claim may be procedurally defaulted if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n. 1; *O'Sullivan*, 526 U.S. at 848 (when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural default of those claims); *Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (failure to exhaust claims in state court resulted in procedural default of claims for federal habeas purposes when state's rules for filing petition for post-conviction relief barred petitioner from returning to state court to exhaust his claims).

When a petitioner has procedurally defaulted his claims, federal habeas review occurs only in limited circumstances. "A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Martinez v. Ryan*, 132 S.Ct. 1309, 1316 (2012). Cause requires a showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule... [such as] a showing that the factual or legal basis for a claim was not reasonably available to counsel, … or that some interference by officials made compliance impracticable." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotations and citations omitted). Prejudice requires "showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and

substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Additionally, a habeas petitioner "may also qualify for relief from his procedural default if he can show that the procedural default would result in a 'fundamental miscarriage of justice.'" *Cook v. Schriro*, 538 F.3d 1000, 1028 (9th Cir. 2008) (*quoting Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This exception to the procedural default rule is limited to habeas petitioners who can establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327; *see also Murray*, 477 U.S. at 496; *Cook*, 538 F.3d at 1028.

### B. Adjudication on the Merits

The Ninth Circuit has held that "a state has 'adjudicated' a petitioner's constitutional claim 'on the merits' for purposes of § 2254(d) when it has decided the petitioner's right to post conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits." *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004). In *Lambert*, the Ninth Circuit clarified that an evidentiary hearing is not a prerequisite to the application of AEDPA's deferential standard. *Id.* (declining "to accept [the petitioner's] proposal to inject an 'evidentiary hearing' requirement as a pre-requisite to AEDPA deference").

Here, the superior court decided Petitioner's right to post-conviction relief on all three of his claims on the basis of the substance of the constitutional claims advanced; thus, § 2254(d)'s deferential standard of review applies to the two counts that are not procedurally defaulted.

### D. Section 2254(d)

If a habeas petition includes a claim that was properly exhausted, has not been procedurally defaulted, and was "adjudicated on the merits in State court proceedings," federal court review is limited by § 2254(d). Under § 2254(d)(1), a federal court cannot grant habeas relief unless the petitioner shows: (1) that the state court's decision was

contrary to federal law as clearly established in the holdings of the United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, ––– U.S. –––, 132 S.Ct. 38, 43 (2011); (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770 (2011). This standard is "difficult to meet." *Richter*, 131 S.Ct. at 786. It is also a "highly deferential standard for evaluating state court rulings… which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotations and citation omitted).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court that existed at the time of the state court's decision. *Greene*, 132 S.Ct. at 44. A state court's decision is contrary to federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 14 (2003).

A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 131 S.Ct. at 786 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### E. Ineffective Assistance of Counsel Claims

The Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish that his trial counsel was ineffective under *Strickland*, Petitioner must show: (1) that his trial

1   counsel's performance was deficient; and (2) that trial counsel's deficient performance
2   prejudiced petitioner's defense. *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998)
3   (*citing Strickland*, 466 U.S. at 688, 694).

4         To establish deficient performance, Petitioner must show that "counsel made
5   errors so serious… [that] counsel's representation fell below an objective standard of
6   reasonableness" under prevailing professional norms." *Strickland*, 466 U.S. at 687–688.
7   The relevant inquiry is not what defense counsel could have done, but rather whether the
8   decisions made by defense counsel were reasonable. *Babbit v. Calderon*, 151 F.3d 1170,
9   1173 (9th Cir. 1998). In considering this factor, counsel is strongly presumed to have
10  rendered adequate assistance and made all significant decisions in the exercise of
11  reasonable professional judgment. *Strickland*, 466 U.S. at 690. The Ninth Circuit "h[as]
12  explained that '[r]eview of counsel's performance is highly deferential and there is a
13  strong presumption that counsel's conduct fell within the wide range of reasonable
14  representation.'" *Ortiz*, 149 F.3d at 932 (*quoting Hensley v. Crist*, 67 F.3d 181, 184 (9th
15  Cir. 1995)). "The reasonableness of counsel's performance is to be evaluated from
16  counsel's perspective at the time of the alleged error and in light of all the circumstances,
17  and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365,
18  381 (1986). Additionally, "[a] fair assessment of attorney performance requires that every
19  effort be made to eliminate the distorting effects of hindsight, to reconstruct the
20  circumstances of counsel's challenged conduct, and to evaluate the conduct from
21  counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Acts or omissions that
22  "might be considered sound trial strategy" do not constitute ineffective assistance. *Id*.

23        Even where trial counsel's performance is deficient, Petitioner must also establish
24  prejudice in order to prevail on an ineffective assistance of counsel claim. To establish
25  prejudice, Petitioner "must show that there is a reasonable probability that, but for
26  counsel's unprofessional errors, the result of the proceeding would have been different. A
27  reasonable probability is a probability sufficient to undermine confidence in the
28  outcome." *Strickland*, 466 U.S. at 694. Under the prejudice factor, "[a]n error by counsel,

even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. "The likelihood of a different result must be substantial, not just conceivable." *Richter,* 131 S.Ct. at 792. Further, because failure to make the required showing of either deficient performance or prejudice defeats the claim, the court need not address both factors where one is lacking. *Strickland*, 466 U.S. at 697–700.

Additionally, under the AEDPA, the federal court's review of the state court's decision on an ineffective assistance of counsel claim is subject to another level of deference. *Bell v. Cone*, 535 U.S. 685, 698–699 (2002). This creates a "doubly deferential" review standard in which a habeas petitioner must show not only that there was a violation of *Strickland*, but also that the state court's resolution of the claim was more than wrong, it was an objectively unreasonable application of *Strickland*. *See Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam); *Bell*, 535 U.S. at 698-99; *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002); *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (federal habeas court's review of state court's decision on ineffective assistance of counsel claim is "doubly deferential."). The issue under section 2254(d) is not whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S.Ct. at 788.

**III. Analysis**

**A. Ground One: Failure to Request *Willits* Instruction**

In Ground One, Petitioner contends his trial counsel was ineffective by failing to request a *Willits* instruction. Petitioner argues that the investigating detectives failed to properly collect and preserve evidence that Petitioner believes would have exonerated him. Specifically, Petitioner states that detectives failed to collect a blanket which Petitioner claims would have contained his DNA based on a prior occasion[3] where an unnamed woman performed oral sex on Petitioner and spat out his ejaculate material onto

---

[3] Petitioner also stated that he had never been to the trailer when the victim was allegedly assaulted, but that the oral sex incident occurred at another trailer the victim previously lived at. (Doc. 11 at 17).

- 10 -

the blanket.[4] (Doc. 11 at 14). Petitioner's defense theory was that his DNA was on the blanket from this prior sexual encounter and that his DNA was transferred to the victim when she lay on the blanket. Petitioner also argues the detectives failed to collect a pair of pajama bottoms that the victim claimed Petitioner wiped his face with. *Id*. Petitioner contends that if the blanket had been processed as evidence, it would have substantiated his accounting of events, and if the pajama bottoms had been processed and showed no trace of Petitioner's DNA, that would have exonerated Petitioner and shown the victim to be untruthful. *Id*.

The *Willits* instruction is based on Arizona state law. *See generally Willits*, 96 Ariz. 184. "To be entitled to a *Willits* instruction, a defendant must prove that (1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." *State v. Smith*, 158 Ariz. 222, 227, (1988); *see also State v. Speer*, 221 Ariz. 449, 457 (2009). To show that evidence had a "tendency to exonerate," the defendant must do more than simply speculate about how the evidence might have been helpful. *See, e.g., Speer*, 221 Ariz. at 457; *State v. Murray*, 184 Ariz. 9, 33 (1995) (noting that "[a] *Willits* instruction is not given merely because a more exhaustive investigation could have been made"). "The phrase 'tendency to exonerate,' however, does not mean the evidence must have had the potential to completely absolve the defendant. Rather, …a defendant is entitled to an instruction if he can demonstrate that the lost evidence would have been material and potentially useful to a defense theory supported by the evidence." *State v. Glissendorf*, 235 Ariz. 147, ¶ 10 (2014) (internal quotations and citations omitted).

Because the *Willits* instruction is based on state law, when the state court rules that a defendant is not entitled to a *Willits* instruction as a matter of state law, that decision is not reviewable in a federal habeas proceeding. *Ballesteros v. Ryan*, 2014 WL 1911443, *7 (D. Ariz. May 13, 2014) (*citing Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). "A habeas

---

[4] The DNA samples analyzed revealed DNA from Petitioner and the victim, but no third person's DNA was found. (Doc. 19 Ex. U at 28).

- 11 -

court's review of a failure to give a jury instruction is limited to a determination of whether the failure so infected the entire trial that the defendant was deprived of his right to a fair trial." *Murray v. Schriro*, 2008 WL 2278140, *32 (D. Ariz. May 30, 2008), *aff'd*, 746 F.3d 418 (9th Cir. 2014). "Because the omission of an instruction is less likely to be prejudicial than a misstatement of the law, a habeas petitioner whose claim involves a failure to give a particular instruction bears an 'especially heavy' burden." *Id.* (*quoting Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). When alleging a federal due process claim, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). "To establish a due process violation when the State fails to preserve evidence that is only potentially exculpatory, [the petitioner] must demonstrate that the State acted in bad faith." *Ballesteros*, 2014 WL 1911443 at *7 (*citing Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988)).

In denying Petitioner's Rule 32 petition on the *Willits* instruction claim, the Arizona Superior Court found that "the police did not wrongfully fail to preserve or collect evidence" and the "Petitioner has shown no bad faith by the police," thus "[n]o *Willits* instruction was justified under these facts." (Doc. 17 Ex. N at 64). Specifically, the court reasoned:

> First the police had no reason to know that the blankets or pajamas were potential evidence until Petitioner and victim gave their statements, several days after the assault. Petitioner did not identify any blanket or any other physical evidence. Secondly, the Petitioner's statement was equivocal. First he denied any reason for his ejaculatory material to be in the victim's residence. Later he contradicted himself and indicated he ejaculated during sex with a third person there. Third, the victim indicated in her second statement that the scene would have been contaminated by the time of that statement, when she gave details sufficient to attempt to identify evidence. Finally, when the police did get to the victim's residence, it was the left over hulk of an abandoned motorhome with trash and debris and abandoned vehicles strewn about. There was no way for the police to identify evidence there, exculpatory or otherwise.

*Id.*[5]

The Superior Court further noted that even if the facts could have justified a *Willits* instruction, Petitioner would have to "show that the failure to request the instruction results from [counsel's] failure to act with reasonable competence as opposed to action taken for strategic or tactical reasons." *Id.* (*citing State v. Nash*, 143 Ariz. 392 (1985)). The court concluded that "[v]iewing defense counsel's decisions objectively, this Court cannot say that he failed to act reasonably under the circumstances, considering prevailing professional norms." *Id.* at 65.

In denying Petitioner's petition for review from the Arizona Supreme Court, the Arizona Court of Appeals noted that Petitioner cited no legal authority, nor did the court find any, supporting his clam that a "*Willits* instruction is appropriate based on a generalized claim that a law enforcement investigation was substandard." (Doc. 18 Ex. Q at 29); *see also Murray*, 184 Ariz. at 33 ("A *Willits* instruction is not given merely because a more exhaustive investigation could have been made."). The court further noted that Petitioner did "not contest the trial court's finding that the crime scene—T.'s trailer—was in such disarray and 'so full of trash and debris' that it would have been difficult to identify viable material evidence." (Doc. 18 Ex. Q at 29). The appellate court affirmed the superior court's determination that Petitioner had "not established that he was entitled to a *Willits* instruction, and therefore, he has not demonstrated his trial counsel was ineffective for failing to request such an instruction." *Id.* at 31.

The Arizona Supreme Court has found that when a petitioner is able to present his theory of defense even without the presence of the missing evidence, the lack of a *Willits* instruction does not prejudice the petitioner. *State v. Henry*, 176 Ariz. 569, 583 (1993). Here, during cross examination of the State's DNA expert, defense counsel was able to elicit testimony from the expert that DNA transference, such as that claimed by the

---

[5] The Court notes that during the Rule 32 evidentiary hearing, the detective witnesses provided extensive testimony regarding their investigation and collection of evidence. *See* Doc. 17 Ex. L; *see also* Doc. 17 Ex. N (Rule 32 Ruling summarizing the testimony).

- 13 -

1 Petitioner, could in fact occur.[6] (Doc. 19 Ex. U at 48-49). Defense counsel again 2 presented this contention during closing arguments. *Id*. at 59-67. Thus, Petitioner was 3 able to present his complete theory of defense, even without the missing blanket and 4 pajama bottoms. Though Petitioner argues generally that "had the jury been given a 5 *Willits* instruction, the verdict likely would have been different," here, as in *Henry*, the 6 Petitioner was able to present his defense without impairment, and Petitioner has failed to 7 demonstrate a substantial likelihood that the outcome of his trial would have been any 8 different had counsel requested the *Willits* instruction. *See Richter*, 131 S.Ct. at 772.

9 During the evidentiary hearing on Petitioner's Rule 32 Petition, Petitioner's trial 10 counsel explained his reasons for not requesting a *Willits* instruction. Counsel stated that 11 he was aware of the language in the *Willits* instruction, that "I did what I thought was 12 necessary given the heat of battle during a trial" and that "I made the best decision under 13 the case that I was trying." (Doc. 17 Ex. M at 17-18). Counsel further explained that his 14 normal procedure was to consider whether or not to ask for a *Willits* instruction and to 15 ask for one if he felt it was appropriate. *Id*. at 28. "Counsel's decisions regarding jury 16 instructions are fairly construed as a strategic decision." *Pinkoson v. Davenport*, 2009 17 WL 2219285, *5 (D. Ariz. July 24, 2009).

18 In sum, Petitioner has failed to establish a federal due process claim on this count 19 because he has not shown that the state acted in bad faith. Both the Arizona Superior 20 Court and Court of Appeals found that, as a matter of state law, Petitioner was not 21 entitled to a *Willits* instruction. Thus, Petitioner cannot demonstrate deficient 22 performance because counsel cannot be considered to be "ineffective for failing to 23 advance a position under state law that the state appellate court said was meritless." 24 *Lopez* v. *Thurmer*, 594 F.3d 584, 587 (7th Cir. 2010); *Garcia,* 2013 WL 4714370 at *3 25 ("on post-conviction relief the state court found that Petitioner was not entitled to a

---

[6] On direct examination, the expert testified that if someone had fellatio on a sheet and two months later the victim slept on that sheet, DNA transference would be highly unlikely from a dried stain. (Doc. 19 Ex. U at 32, 37). On cross examination, the expert affirmed that if someone was sweating, it could lubricate the person's shirt sufficiently that if she rubbed herself against a dry sample, it could cause some transfer. *Id*. at 49.

- 14 -

1 *Willits* instruction and therefore, trial counsel had not been ineffective for failing to
2 request one or for not objecting to the trial court's failure to give one."). Further,
3 Petitioner has not demonstrated prejudice because even without having access to the
4 missing blanket and pajama bottoms, Petitioner was still able to present his complete
5 theory of defense. Moreover, the Petitioner was convicted in part based on the presence
6 of his DNA on the victim's genitalia, despite his repeated denials that he had sexual
7 contact with the victim. (Doc. 17 Ex. N. at 65). Thus, even if the blanket and pajama
8 bottoms had been admitted into evidence, it is unlikely that it would have changed the
9 outcome of the case. Finally, for the reasons discussed above, Petitioner has failed to
10 demonstrate that the state courts unreasonably applied *Strickland* to his claim.

11 Because Petitioner has not shown that the state court's determination on this claim
12 was based on an unreasonable determination of the facts, or that it was contrary to or an
13 unreasonable application of *Strickland*, the Magistrate Judge recommends the District
14 Court deny relief on Ground One.

15 **B. Ground Two: Failure to Object to Detective's Reading of Petitioner's**
16 **Statement**

17 During Petitioner's trial, Petitioner's post-arrest statements were introduced by
18 having a detective read portions from a transcript of the interview. In Ground Two,
19 Petitioner argues that trial counsel was ineffective because counsel did not object to the
20 detective's testimony. (Doc. 11 at 20-22). Petitioner states that counsel should have
21 objected and required the State to produce a redacted audio recording of his statement
22 because under state law, the audio recording was the best evidence of the interview. *Id*.
23 Petitioner further argues that "reading the petitioners statement from a transcript
24 detrimentally highlighted the petitioners decision not to testify." *Id*. at 21.

25 Petitioner also argues that the "Court of Appeals and the Arizona Supreme Court
26 also failed to address the petitioner's argument that rule 1002, Arizona Rules of Evidence
27 required the state to present the redacted version of the original recording." (Doc. 11 at
28 16). However, this Court may not grant habeas relief for errors of state evidentiary law.

*See Bible v. Schriro*, 497 F.Supp.2d 991, 1030 (D. Ariz. 2007), *aff'd sub nom., Bible v. Ryan*, 571 F.3d 860 (9th Cir. 2009); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("We are not a state supreme court of errors; we do not review questions of state evidence law."). "Errors of state evidentiary law do not entitle one to federal habeas relief unless the alleged error 'so fatally infected the proceedings as to render them fundamentally unfair.'" *Gonzalez v. Knowles*, 515 F.3d 1006, 1011 (9th Cir. 2008) (*quoting Jammal*, 926 F.2d at 919); *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) ("whether or not the admission of evidence is contrary to a state rule of evidence, a trial court's ruling does not violate due process unless the evidence is 'of such quality as necessarily prevents a fair trial.'" (*quoting Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir.1986)). "[T]he presence or absence of a state law violation is largely beside the point," the issue is whether the state proceedings satisfy due process. *Jammal*, 926 F.2d at 919–20.

During the evidentiary hearing for Petitioner's Rule 32 appeal, the judge specifically noted that "I can tell [] you that frequently I would allow, even over objection, the reading of the statement in front of a jury." (Doc. 17 Ex. M at 22). In his decision affirming Petitioner's convictions, the judge further stated:

> There has been no showing that reading portions of Petitioner's statement inaccurately portrayed what he told the police. The Court finds that it did not. This trial court routinely allows both sides in a trial to read statements or portions of statements to juries instead of playing the tape recording in order to promote efficiency, if the statements are otherwise admissible. Even if trial counsel had objected on the basis of the best evidence rule, this Court would have overruled that objection and allowed the reading of the portions that were presented at trial.

(Doc. 17 Ex. N at 62).

Similarly, the Arizona Court of Appeals found no merit to Petitioner's claim that the reading of his statement detrimentally highlighted his decision not to testify. (Doc. 18 Ex. Q at 32). The court noted that Petitioner did "not explain how the detective's reading of his statement, as opposed to the recording, would have had a different effect on the jury's view of his decision not to testify—which the jury was expressly instructed not to

1  consider." *Id*. The appellate court further noted that "the trial court expressly found the
2  detective accurately 'portrayed what [Simmons] told the police.'" *Id*.

3  Thus, both the Arizona Supreme Court and Court of Appeals found no error in the
4  trial court allowing the State's witness to read portions of Petitioner's statement, and
5  further found no merit to Petitioner's contention that the reading somehow negatively
6  influenced the jury regarding Petitioner's decision not to testify. Petitioner has not
7  contended that the witness misread or falsified his statements, nor did the lower courts
8  find any evidence that the witness's reading was inaccurate. Accordingly, the Court finds
9  no error of state evidentiary law that "so fatally infected the proceedings as to render
10 them fundamentally unfair." *Gonzalez*, 515 F.3d at 1011.

11 As to Petitioner's argument that his trial counsel should have objected to the
12 witness's reading of Petitioner's statements on the basis of the best evidence rule, the
13 Court finds Petitioner has not met the standard under *Strickland*, nor has Petitioner shown
14 the state court unreasonably applied *Strickland* to this claim. "To succeed on an assertion
15 that his counsel's performance was deficient because counsel failed to raise a particular
16 argument the petitioner must establish that the argument was likely to be successful,
17 thereby establishing that he was prejudiced by his counsel's omission." *Pinkoson*, 2009
18 WL 2219285 at *4. "A defendant has no constitutional right to compel counsel to raise
19 particular objections if counsel, as a matter of professional judgment, decides not to raise
20 those objections." *Id*. Here, the opinions by the Arizona Supreme Court and Court of
21 Appeals indicate that even if Petitioner's counsel had objected to the witness reading
22 Petitioner's statements, the objection would have been overruled. Thus, Petitioner cannot
23 demonstrate that if counsel had objected, the objection would have been successful.

24 Furthermore, "'[r]eview of counsel's performance is highly deferential and there is
25 a strong presumption that counsel's conduct fell within the wide range of reasonable
26 representation.'" *Ortiz*, 149 F.3d at 932 (*quoting Hensley v. Crist*, 67 F.3d 181, 184 (9th
27 Cir. 1995)). During the Rule 32 evidentiary hearing, Petitioner's trial counsel testified
28 that he worked with the prosecutor to identify which parts of the written transcript would

- 17 -

be redacted before the detective read them, and that he "objected to what was appropriate to object to." (Doc. 17 Ex. M at 19-21). Trial counsel further disagreed with Petitioner's PCR counsel's contention that "the written document is certainly not the best evidence" and that if the State was going to put in the statement, it was required to use the recording. *Id.* at 19. Trial counsel's decision to not voice objection over the reading of Petitioner's statement constitutes "sound trial strategy" and does not meet the threshold of ineffective assistance. *Strickland*, 466 U.S. at 689.

Because Petitioner has not shown that the state court's decision on this claim was based on an unreasonable determination of the facts, or that it was contrary to or an unreasonable application of *Strickland*, the Magistrate Judge recommends the District Court deny relief on Ground Two.

### C. Ground Three: Failure to Present Mitigating Evidence at Sentencing

In Ground Three, Petitioner alleges trial counsel was deficient for failing to request a psychiatric evaluation for purposes of sentence mitigation. (Doc. 11 at 8). Petitioner argues that if the jury would have seen an evaluation showing the Petitioner to have a severe substance abuse problem, it would have helped to reduce his sentence. *Id*. Respondent contends that Petitioner failed to properly exhaust this claim in state court, thus making it procedurally defaulted and barred from this Court's review. (Doc. 16 at 7-8).

When a petitioner fails to fairly present his claims to the state's highest court, but would now be barred by state procedure from returning to state court, an implied procedural bar may arise. *See O'Sullivan* 526 U.S. at 848-49. If a mandatory rule of state procedure would prevent the presentation of the claim, federal review is precluded. *See Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007), *cert. denied sub nom., Smith v. Mills*, 129 S.Ct. 37 (2008) (when petitioner had not properly exhausted his claim, but state court would now find the exhaustion petition barred, the claim is procedurally defaulted); *O'Sullivan*, 526 U.S. at 848 (when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural

default of those claims).

Here, Petitioner abandoned his sentence mitigation claim when he filed his petition for review with the Arizona Court of Appeals. Arizona Rules of Criminal Procedure regarding timeliness[7] and preclusion[8] prevent Petitioner from now exhausting this claim in state court. Accordingly, this claim is both technically exhausted and procedurally defaulted and thus is not properly before this Court for review. *See Crowell*, 483 F.Supp.2d at 931–33; *Coleman*, 501 U.S. at 732, 735 n. 1; *Garcia*, 2013 WL 4714370 at * 8.

Petitioner has failed to show cause for, or prejudice arising from, his procedural default of the claim. *See Martinez*, 132 S.Ct. at 1316. Indeed, Petitioner seems to concede that Ground Three is not properly before this Court, as he makes no substantive arguments on this issue and completely abandons this claim in his traverse. (*See* Docs. 11, 27 & 28). Accordingly, habeas relief on the merits of this claim is precluded, and the Magistrate Judge recommends the District Court deny relief on Ground Three.

**IV.    Recommendation**

In conclusion, the Magistrate Judge **RECOMMENDS** that the District Court **DENY** Petitioner Ricky Lamar Simmons' Petition for Writ of Habeas Corpus Relief (Doc. 11).

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. FED. R. CIV. P. 72(b). No reply to any response shall be filed. *See id*. If objections are not timely filed, then the parties' rights to de novo review by the District Court may be deemed waived. *See United States* v. *Reyna-Tapia*, 328 F.3d 1114, 1121

---

[7] Ariz. R. Crim. P. 32.4(a) states that post-conviction proceedings must begin within 90 days of either the day of judgment and sentence or the date the mandate issues on direct appeal, whichever is later. These deadlines have long since passed in this matter.

[8] Ariz. R. Crim. P. 32.2(a) states that, absent narrowly tailored exceptions not applicable here, successive post-conviction petitions are precluded.

(9th Cir. 2003) (en banc).

Dated this 18th day of November, 2014.

_____
Eric J. Markovich
United States Magistrate Judge